J-S35040-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
              :               PENNSYLVANIA
              :
         v.           :
              :
              :
ROBERT MARK GESKE        :
              :
      Appellant     :   No. 1417 MDA 2017

Appeal from the Judgment of Sentence August 28, 2017
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000490-2017

BEFORE:  BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:         **FILED JULY 30, 2018**

Robert Mark Geske (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of home improvement fraud.[1]  We affirm.

Appellant was charged with home improvement fraud under 73 P.S. § 517.8(a)(2).  The case proceeded to a jury trial on August 28, 2017.  Because Appellant challenges the sufficiency of the evidence, we review the trial evidence in detail.  The victim, Charles Burford (homeowner), testified that he hired Appellant to perform exterior stone work at his house after finding Appellant's name in the Yellow Pages.  N.T. Trial Vol., 8/28/17, at 8.  On July

---

[1] 73 P.S. § 517.8(a)(2).  This statute is a part of the Home Improvement Consumer Protection Act, 73 P.S. §§ 517.1 – 517.18.

28, 2016, the homeowner signed a written "Proposal," drafted by Appellant, which stated that the total cost for the masonry work was $12,858.80, of which one-third was due immediately, one-third was due when work began, and the remainder was due upon completion of the work. The homeowner gave Appellant a check for $4,200, which Appellant cashed. *Id.* at 13-15. The written contract did not set forth a time schedule for the work, but the homeowner and Appellant verbally agreed that Appellant would begin work on August 17, 2016. *Id.* at 15. Subsequently, Appellant asked the homeowner if he could reschedule to September 15th because he had a commitment to an unrelated brick job, and the homeowner agreed. *Id.* at 15-16. However, the homeowner hired Appellant to perform other work on the weekends. First, the homeowner hired Appellant to install a kitchen tile floor, and paid him with a check for the agreed-upon cost of $500.[2] Appellant then requested $300 more, and the homeowner agreed and gave him a check for that amount. *Id.* at 10. Appellant and his partner or employee, Pablo, completed the tile work around August 20th or 21st.[3] *Id.* at 10, 31. The homeowner then hired Appellant to install kitchen cabinets for $800. *Id.* The homeowner gave Appellant a check for $400 to begin the work, but Appellant did not complete

---

[2] The homeowner supplied all the tile and materials, and paid Appellant for labor only. N.T., 8/28/17, at 31.

[3] The homeowner stated that Pablo "did an excellent job." N.T., 8/28/17, at 33.

it, and instead, merely "opened up some boxes[,] moved some cabinetry in place," and left the kitchen in disarray. *Id.* at 11, 16, 31. The last time Appellant was in the house was September 4, 2016. *Id.* at 32.

The homeowner further testified that on September 8, 2016, he and his wife realized that personal items were missing from their home, including a 9-millimeter gun, a reciprocating saw, other tools, and an expensive watch. The homeowner contacted Appellant and Appellant acknowledged that he had the reciprocating saw and stated he would return it the next day. *Id.* at 17-18. The homeowner also reported the missing items to police, but has not recovered any of the items. *Id.* at 18.

The homeowner also testified that on September 15, 2016 — the agreed-upon date for Appellant to begin the masonry work — Appellant failed to appear. The following day, on the advice of the police, the homeowner sent Appellant a letter via certified mail, requesting a refund of the $4,200 deposit. *Id.* at 20. On October 10th, Appellant responded by text message, stating that he wished to begin the masonry work. *Id.* at 24. The homeowner sent a second letter, declining Appellant's proposal and again requesting a return of his deposit. *Id.* at 25. At the direction of the police, the homeowner had no further contact with Appellant. Appellant left tools in the homeowner's home, and the homeowner wished to take them to the police station. The police, however, instructed the homeowner to keep the tools until Appellant could, with police supervision, pick them up. *Id.* at 25-26. The homeowner

was not familiar with tools but estimated that Appellant's tools were not worth more than $300.[4]  *Id.* at 43.

The Commonwealth also presented the testimony of Police Detective Deron Manndel, who stated that on September 12, 2016, the homeowner reported that items were missing from his home; that his contractor, Appellant, or one of his workers may be involved; and that he was having some issues with Appellant completing the contracting work.  *Id.* at 53. Detective Manndel advised the homeowner to give Appellant the chance to complete the work, but subsequently told him to send a certified letter to demand a refund (which was the homeowner's desire), and then, after Appellant failed to respond to the letter, to have no further contact with Appellant.  *Id.* at 54, 60.  Police obtained a warrant to search Appellant's home but did not find any of the homeowner's missing items.  *Id.* at 61. Finally, Detective Manndel discovered that Appellant's contractor license had expired on August 2, 2015.  *Id.* at 56.

Appellant testified in his defense.  He first stated that although the homeowner gave him $800 for installing floor tiles, he still owed Appellant an additional $224.  *Id.* at 71.  Appellant also presented a photograph of the homeowner's kitchen cabinets, which, according to Appellant, were all correctly installed.  *Id.* at 72.  He also testified that he has tinnitus and when

---

[4] The homeowner's wife, Valerie Burford, also testified as a Commonwealth witness, corroborating the testimony of her husband.

the homeowner called him about the saw, Appellant initially misheard him as asking to borrow a saw, to which Appellant agreed. *Id.* at 75. However, when the homeowner accused him of taking the saw, Appellant denied taking it or any other items. *Id.* at 75-76. When asked why he did not return the $4,200 deposit as the homeowner requested, Appellant stated that the homeowner had $4,600 worth of his equipment, and that Appellant called and sent text messages to the homeowner in an attempt to resolve the theft allegation, so that Appellant could continue not only the masonry work, but also perform additional work that the homeowner may be interested in. *Id.* at 85-86. Appellant acknowledged that he has not returned the $4,200 deposit. *Id.* at 86.

On August 28, 2017, the jury found Appellant guilty of home improvement fraud. That same day, the trial court sentenced him to 9 to 23 months' imprisonment and a consecutive 2 years' probation. The court also ordered him to pay $4,200 restitution and revoked his contractor's license.[5] Appellant did not file a post-sentence motion, but timely appealed and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of

---

[5] *See* 73 P.S. § 517.8(c)(6) ("[T]he court may revoke or suspend the certificate. . . . A person whose registration has been revoked or suspended may petition the court of original jurisdiction for reinstatement after a period of five years . . . or as specified in the court's order.").

errors.[6]

Appellant presents the following issue for our review:

Whether the evidence was insufficient to support the guilty verdict for Home Improvement Fraud (F2), where the Commonwealth failed to prove beyond a reasonable doubt that Appellant intended to defraud the homeowner.

Appellant's Brief at 7.

Appellant argues that the Commonwealth failed to establish that at the time the written "Proposal" was executed, he intended to defraud or injure the homeowner, and thus the evidence was insufficient to support his conviction of home improvement fraud.[7]  Appellant contends that it was undisputed that: the written "Proposal" did not set forth a schedule for the masonry work; he and the homeowner verbally agreed that the masonry work did not have to start immediately; and they later agreed to delay the masonry work so that Appellant could install kitchen tiles and subsequently, kitchen cabinets.

_____

[6] The trial court's September 21, 2017 Pa.R.A.P. 1925(b) order was not served on Appellant's counsel, and thus an amended order granted Appellant additional time to file a statement.  Appellant's counsel filed both a Rule 1925(b) statement and a motion to withdraw from representation.  Counsel was permitted to withdraw, and the court appointed the Berks County Public Defender's Office to represent Appellant.  Appellant's new counsel successfully sought leave to file an amended Rule 1925(b) statement, and filed the amended statement on December 29, 2017.

[7] Although Appellant did not challenge the sufficiency of the evidence in any post-trial motion, this issue is not waived.  *See* Pa.R.Crim.P. 606, *cmt.* ("The defendant may also raise [a challenge to the sufficiency of the evidence] for the first time on appeal under [paragraph] (A)(7).").

Appellant's Brief at 17. Appellant also points out that although items were missing from the homeowner's home, "Appellant was never found to have taken such items." *Id.* at 18. Appellant emphasizes that after he was charged with home improvement fraud, he contacted the homeowner several times in an attempt schedule completion of the masonry work, but it was the homeowner, acting upon advice from the police, who refused to respond. Appellant concludes that at most, the evidence could support a civil cause of action, but not a criminal conviction of home improvement fraud. We disagree.

> This Court has stated:
>
> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. McCall***, 911 A.2d 992, 996 (Pa. Super. 2006) (citation omitted).

Appellant was convicted under the following sub-section of the home improvement fraud statute:

**(a) OFFENSE DEFINED.—**A person commits the offense of home improvement fraud if, with intent to defraud or injure anyone or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

\* \* \*

(2) receives any advance payment for performing home improvement services or providing home improvement materials and fails to perform or provide such services or materials when specified in the contract taking into account any force majeure or unforeseen labor strike that would extend the time frame or unless extended by agreement with the owner and fails to return the payment received for such services or materials which were not provided by that date[.]

**See** 73 P.S. § 517.8(a)(2). With respect to the element of intent, our Crimes Code states:

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(i)-(ii). "Criminal intent may be established by either direct or circumstantial evidence." ***Commonwealth v. Parker***, 564 A.2d 246, 249 (Pa. Super. 1989).

Here, the trial court found that the homeowner paid Appellant $4,200 to perform stone installation, Appellant failed to perform the agreed-upon

work on the orally agreed-upon dates of August 17 and September 15, 2016, and Appellant refused to return the deposit when the homeowner demanded it. Trial Court Opinion, 3/2/18, at 10. The court also noted that the written "Proposal," which Appellant drafted, violated the Home Improvement Consumer Protection Act by failing to set forth approximate start and completion dates as required by 73 P.S. § 517.7(a)(6),[8] and that in any case, "general contract law dictates that the oral agreements between [the homeowner] and Appellant were enforceable against Appellant." Trial Court Opinion, 3/2/18, at 11. The court reasoned that "Appellant had ample opportunity to begin the contracted work" between August 17 and September 15, 2016, and neither the homeowner nor his wife took any action that would have prevented Appellant from performing the work. *Id.* at 12. Accordingly, the trial court concluded that viewing the evidence in the light most favorable to the Commonwealth, the jury could have determined that all of the elements of home improvement fraud were established beyond a reasonable doubt.

On appeal, Appellant selectively cites only the evidence that supports his argument, and overlooks this Court's duty to evaluate "the entire record" and consider "all the evidence admitted at trial in the light most favorable" to the Commonwealth. *See McCall*, 911 A.2d at 996. Specifically, in

---

[8] *See* 73 P.S. § 517.7(a)(6) ("No home improvement contract shall be valid or enforceable against an owner unless it . . . [c]ontains the approximate starting date and completion date.").

emphasizing that the written "Proposal" did not include any schedule for the masonry work, Appellant ignores that the lack of such dates violated the Home Improvement Consumer Protection Act — as noted by the trial court – and disregards the homeowner's testimony that he and Appellant ultimately agreed to a start date of September 15, 2016.  Trial Court Opinion, 3/2/18, at 10.  The record also does not support Appellant's explanation that he and the homeowner both agreed to postpone the start date so that Appellant could perform other work on the homeowner's kitchen.  *See* Appellant's Brief at 10.  The homeowner clearly testified that Appellant requested a postponement so Appellant could complete an unrelated job, but the homeowner was able to hire him to do tile and cabinet work during weekends.  N.T., 8/28/17, at 15-16.  Furthermore, Appellant did not dispute that he failed to appear on September 15th, that the homeowner demanded a refund of his $4,200 deposit, and that one month later, the homeowner declined his proposal to do the masonry work and again requested a refund.

Additionally, while it is true that a police search of Appellant's home did not produce any of the items that the homeowner reported missing, the jury was free to believe the homeowner's testimony that Appellant acknowledged, in a telephone call, that that he took a reciprocating saw and promised to return it the next day, but failed to; likewise, the jury was free to disbelieve Appellant's testimony that he denied taking the saw.  Finally, we note that the jury heard evidence that Appellant's contractor license had expired more than

a year before he met the homeowner, that he had initially agreed to a fee of $500 for his labor to install the kitchen floor tile (where the homeowner provided all the materials) but subsequently requested more money, and that Appellant, despite receiving $400 from the homeowner, failed to complete the cabinet installation to the homeowner's satisfaction. Viewing all of the trial evidence in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to support the jury's finding that Appellant intended to defraud or injure the homeowner. *See* 18 Pa.C.S.A. § 302(b)(i)-(ii) (intent element); 73 P.S. § 517.8(a)(2); *McCall*, 911 A.2d at 996; *Parker*, 564 A.2d at 249 ("Criminal intent may be established by either direct or circumstantial evidence."). We therefore affirm the Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/30/2018

- 11 -