J-S53024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY  BRACY | : | |
| | : | |
| Appellant | : | No. 30 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 23, 2013
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002885-2012

BEFORE:   SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED DECEMBER 21, 2020**

Anthony Bracy appeals from the judgment of sentence, entered in the
Court of Common Pleas of Philadelphia County, after the Honorable Robert P.
Coleman, sitting without a jury, convicted him of aggravated assault,[1] simple
assault,[2] and recklessly endangering another person ("REAP").[3]  After our
review, we affirm.

Judge Coleman set forth the facts of this case as follows:

The incident [giving rise to] this case took place at 5:30 p[.]m[.]
on February 12, 2012.  [At that time,] [c]omplainant and [Bracy]
were inside the apartment of [c]omplainant at 1109 Philmore
Street in Philadelphia.   While in the apartment[, Bracy] and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a)(1).

[2] 18 Pa.C.S.A. § 2701.

[3] 18 Pa.C.S.A. § 2705.

[c]omplainant engaged in a heated verbal argument over [Bracy's] photograph being published in the newspaper. [Bracy] then asked to be driven by [c]omplainant to get his hair[ ]cut. Complainant agreed to take [Bracy,] but needed to get ready and was seated on the bed combing her hair. Frustrated at the pace at which [c]omplainant was getting ready[, Bracy] started pacing angrily and balling his fists. [Bracy] then, without provocation, became aggressive, jumped onto the bed, grasped [c]omplainant's neck with both hands, placed his thumbs on her throat and choked her. While being choked[,] the [c]omplainant mouthed words to stop but could not form any sounds. Complainant was unable to breath[e] and subsequently lost consciousness.

When [c]omplainant regained consciousness, she was disoriented by made her way to the bathroom to appraise the damage and clean up. Complainant observed multiple red marks and an actively bleeding laceration of the mole on her neck. Meanwhile, [Bracy] was sitting in another room expressing concerns that [c]omplainant would go to the police. Complainant finished getting ready and drove [Bracy] to Hunting Park for his haircut.

After dropping [Bracy] off, [c]omplainant drove to the Philadelphia Police 15th District to report the incident. Officer [Sharon] Pawlowski photographed [c]omplainant's neck[, capturing] red hand marks and the open wound from [Bracy's] grip. After [c]omplainant filed [a] police report[,] she went to 1301 Filbert Street and obtained a restraining order.

Complainant then went to a friend's house to stay the night. While there, [c]omplainant's friend took pictures of her neck[,] which showed large bruises on both sides from the choking. Early the next morning, around 1:00 a[.]m[.], [Bracy] called and talked with [c]omplainant[, who] let him know she had left a key for [Bracy] under the [door] mat. The next day[, c]omplainant was escorted by officers back to her apartment to collect personal effects. [Bracy was present at the apartment and police arrested him there.]

Trial Court Opinion, 8/2/19, at 3-4 (paragraph breaks added).

On January 7, 2013, Bracy proceeded to a bench trial before Judge

Coleman, who found him guilty of the above offenses. On May 23, 2013,

Bracy was sentenced to 7 to 14 years' incarceration for aggravated assault; he received no further penalty for simple assault and REAP. Bracy filed an appeal to this Court, which was quashed as untimely. On December 27, 2018, Bracy's direct appeal rights were subsequently reinstated, *nunc pro tunc*, pursuant to proceedings under the Post Conviction Relief Act ("PCRA").[4] This appeal follows; both Bracy and the trial court have complied with Pa.R.A.P. 1925.

> Bracy raises the following questions for our review:
>
> [1.] Was the evidence insufficient to support the guilty verdict for aggravated assault where the evidence did not prove beyond a reasonable doubt that [Bracy] attempted to cause serious bodily injury?
>
> [2.] Did the [trial] court abuse its discretion by fashioning a sentence that greatly exceeded that which is necessary to protect the public, [was] greater than that requested by the [Commonwealth,] and seems not to have taken into consideration [Bracy's] great potential for complete rehabilitation, employability, and great remorse, [the latter of] which the sentencing court incorrectly said that [Bracy was lacking]?

Brief of Appellant, at 5 (reordered for ease of disposition).

Bracy first challenges the sufficiency of the evidence supporting his conviction for aggravated assault.

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact–finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact–

---

[4] 42 Pa.C.S.A. §§ 9541-9546.

finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact–finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Williams**, 153 A.3d 372, 375 (Pa. Super. 2016).

A person may be convicted of aggravated assault graded as a first degree felony if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). "Serious bodily injury" has been defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. For purposes of aggravated assault, an "attempt" is found where an "accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." **Commonwealth v. Gray**, 867 A.2d 560, 567 (Pa. Super. 2005). Intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct, or attendant circumstances. **Commonwealth v. Thomas**, 65 A.3d 939, 944 (Pa. Super. 2013).

Here, Bracy argues that the complainant did not suffer "serious bodily injury" as required by the statute; rather, she merely suffered "bodily injury." Brief of Appellant, at 26. Moreover, he asserts that the Commonwealth failed to establish that he attempted to inflict serious bodily injury, as "the evidence did not show any extreme indifference to the value of human life[.]" *Id.* at 27.[5] Bracy is entitled to no relief.

At trial, the complainant testified that Bracy "jumped at [her] and grab[bed her] throat" after becoming angry that she was not moving fast enough to get ready. N.T. Trial, 1/7/13, at 15. Bracy knocked her down, placed both hands around her throat, and was "on top of [her] strangling [her]." *Id.* at 16. Bracy's thumbs were on the front of the complainant's throat and she was unable to breathe. *See id.* After she begged Bracy to stop because she couldn't breathe, he "re-positioned his hands even lower and he pushed harder." *Id.* at 17. Bracy's actions caused the complainant to lose consciousness. *See id.* When she eventually regained consciousness, she was unable to see and her ears were ringing. *See id.* Upon looking in the mirror, she saw blood on her neck from a mole that had been cut open, as well as two handprints, one on each side of her neck. *See id.* at 19.

---

[5] Bracy also asserts in his brief that "the evidence was contradictory and unreliable." Brief of Appellant, at 28. However, such an allegation raises a challenge to the weight, not the sufficiency, of the evidence—a challenge that Bracy failed to preserve in the trial court. Accordingly, to the extent Bracy attempts to challenge the weight of the evidence, the claim is waived. *See Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009) (where appellant fails to preserve weight of evidence challenge in trial court, claim is waived because appellate court has nothing to review).

When viewed in the light most favorable to the Commonwealth, the complainant's testimony supports a clear inference that Bracy's intent was to cause serious bodily injury to the complainant. **Thomas**, **supra**. This is particularly so where Bracy actually repositioned his hands to squeeze even harder on the complainant's neck after she made it clear to him that she was unable to breathe. **See Commonwealth v. Russell**, 460 A.2d 316 (Pa. Super. 1983) (evidence sufficient to support finding that defendant intended to inflict serious bodily injury where victim attacked without warning and choked until she could no longer breathe, gagged, and felt faint). Accordingly, Bracy's sufficiency claim fails.

In his final claim, Bracy asserts that the trial court abused its discretion in sentencing him to a term of imprisonment that greatly exceeded that necessary for the protection of the public, as well as the sentence requested by the Commonwealth, and failed to take into consideration his rehabilitative needs and remorse. Such a claim constitutes a challenge to the discretionary aspects of Bracy's sentence and does not entitle him to review as a matter of right. **Commonwealth v. Swope**, 123 A.3d 333, 337 (Pa. Super. 2015). Rather, before this Court can address such a discretionary challenge, Bracy must invoke this Court's jurisdiction by: (1) filing a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) including in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) raising a substantial question

that the sentence appealed from is not appropriate under the Sentencing Code. **Swope**, 123 A.3d at 337.

Here, Bracy filed a timely notice of appeal and has included a Rule 2119(f) statement in his brief. However, he has failed to preserve his sentencing challenge by filing a timely post-sentence motion with the trial court. Some procedural background is in order.

Following his sentencing on May 23, 2013, Bracy filed a post-sentence motion to modify his sentence on June 24, 2013; the trial court denied the motion that same day. Bracy filed a notice of appeal to this Court on July 22, 2013. In an unpublished memorandum decision, we quashed that appeal, finding that Bracy's post-sentence motion had been filed beyond the 10-day period provided in Pa.R.Crim.P. 720(A)(1). As a result, we concluded that his notice of appeal was also untimely. **See Commonwealth v. Bracy**, 2052 EDA 2013 (Pa. Super. filed Oct. 10, 2014) (unpublished memorandum decision).

Thereafter, on November 17, 2015, Bracy filed a PCRA petition alleging ineffectiveness of trial counsel and seeking reinstatement of his appellate rights, *nunc pro tunc*. Counsel was appointed and filed an amended petition, again requesting reinstatement of Bracy's direct appeal rights, because "previous counsel was instructed to file an appeal but due to various errors, that appeal was not filed and/or not perfected and indeed was eventually quashed." Amended PCRA Petition, 7/18/18, at ¶ 13. In a contemporaneously filed legal memorandum in support of Bracy's amended PCRA petition, counsel

also stated the following: "Moreover, and because the sentence was at issue and because the Defendant instructed counsel to file for Reconsideration of Sentence, the Court should also reinstate the Defendant's right to file a Motion for Reconsideration of Sentence, *Nunc Pro Tunc*." PCRA Legal Memorandum, 7/18/18, at 6.

On November 5, 2018, the Commonwealth filed a response to Bracy's amended PCRA petition, in which it averred the following:

> The Commonwealth does not oppose defendant's request for reinstatement of his direct appeal rights *nunc pro tunc*. Defendant is not, however, entitled to reinstatement of his right to file post-sentence motions because he has failed to allege and prove prejudice. ***See Commonwealth v. Liston***, 977 A.2d 1089, 1092 (Pa. 2009) (holding that "the failure to file post-sentence motions does not fall within the limited ambit of situations where a defendant alleging ineffective assistance of counsel need not prove prejudice to obtain relief"), ***Commonwealth v. Reaves***, 923 A.2d 1119, 1127 (Pa. 2007) (noting that defendant had to satisfy ***Pierce's*** actual prejudice standard to establish counsel was ineffective for failing to file a requested post-sentence motion).

Commonwealth Response to Amended PCRA Petition, 11/5/18.

Subsequently, on November 29, 2018, court-appointed counsel filed a "supplemental" amended PCRA petition. Therein, counsel specifically requested reinstatement of Bracy's post-sentence rights and, further, alleged that failure to reinstate his post-sentence rights would result in prejudice because, *inter alia*, his discretionary sentencing claim would be waived. ***See*** Supplemental Amended PCRA Petition, 11/29/18, at ¶ 6.

On December 27, 2018, the PCRA court entered an order granting PCRA relief "to the extent that the appellate rights are reinstated *nunc pro tunc*." PCRA Court Order, 12/27/18. Although the PCRA court did not grant Bracy's request that his post-sentence rights be reinstated, Bracy did not appeal this order. Instead, on January 2, 2019, he instituted the instant appeal by filing a notice of appeal, *nunc pro tunc*, from his judgment of sentence. As a result of Bracy's acquiescence to the PCRA court's failure to reinstate his post-sentence rights, he is unable to invoke this Court's jurisdiction to review his discretionary sentencing claim. **See Swope**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/21/20</u>